REQUESTED BY: Gary G. Chunka, Chairman Nebraska Bingo Pickle Card Regulatory Commission, Lincoln, Nebraska
1. What is the extent of authority given the Nebraska Bingo and Pickle Card Regulatory Commission by LB 259, 1983 Legislature, over county, city, and village lotteries?
2. How is it enforced?
3. In the event of a conflict between a governmental subdivision and the commission in the conduct of the subdivision's lottery, who would control?
1. It is limited to such regulation as will `insure fairness, equity, and uniformity.'
2. By rules and regulations.
3. The commission in the limited area described in 1 above.
1. A clearer understanding of the meaning and intent of LB 259 may perhaps be had by emphasizing that the act not only deals with lotteries generally, but also with a specific type of lottery called `lottery by sale of pickle cards.'
Lottery by sale of pickle cards is defined in section 5 of the act and is entirely new.
Lottery is defined by § 28-1101(6) and is the same as previous statutes although other parts of § 28-1101 were amended by section 36 of the LB 259.
By one of said amendments to § 28-1101, a person engages in gambling either if he or she conducts or participates in any lottery, not authorized by specifically mentioned sections, or conducts or participates in any lottery by the sale of pickle cards, not authorized or conducted pursuant to the Nebraska Bingo and Pickle Card Regulatory Act.
Thus, it is clear that there is a definite distinction between lotteries generally and lottery by sale of pickle cards.
Section 11 of LB 259 specifically sets forth which organizations may apply to the Nebraska Bingo and Pickle Card Regulatory Commission for a license to conduct a lottery by sale of pickle cards. It is interesting to note that while it includes most, if not all, of the nonprofit organizations authorized to conduct lotteries generally under the provisions of § 28-1115, it does not include counties, cities, or villages which are authorized to conduct lotteries generally under § 28-1116.
Thus, it appears that while the organizations authorized to conduct lotteries generally under § 28-1115 may apply for a license and conduct lotteries by the sale of pickle cards also, that counties, cities, and villages may not.
Conversely, there is no license requirement for either nonprofit corporations under § 28-1115 or cities, counties, and villages under § 28-1116, to conduct lotteries generally.
With this analysis of the law, we look to your question concerning the meaning of section 52(7) of LB 259 which specifically gives the commission the power to `(7) To regulate lotteries conducted by counties, cities, and villages pursuant to section 28-1116 to insure fairness, equity, and uniformity.'
And section 62 which amends § 28-1116, referred to above, by inserting, `Such lotteries shall be subject to regulation by the Nebraska Bingo and Pickle Card Regulatory Commission.'
It is, of course, a long-standing rule of statutory construction that, `Effect must be given, if possible, to all parts of a statute, and no sentence, clause, or word should be rejected as meaningless or superfluous if that can be avoided, but the subject of the enactment and the language employed, in its plain, ordinary and proper sense, should be taken into account.' Rose v. Hooper, 175 Neb. 645;Brown Real Estate Co. v. Lancaster County, 110 Neb. 665.
In looking at LB 259 as a whole, the bill gives the Nebraska Bingo and Pickle Card Regulatory Commission many specific powers as to the conduct of bingo games and lotteries by pickle card and the licensees thereof, but the only specific mention of regulation of lotteries generally by the commission is that contained in the two references mentioned above. Licensees, as discussed earlier, of lottery by the sale of pickle cards are regulated specifically by sections 15, 16, 17, 21, and 41 through 54.
In construing the entire act, then, we must conclude that the Legislature only intended the commission to have the power to regulate counties, cities, and villages in such a way, as provided in section 52(7), `to insure fairness, equity, and uniformity.'
2. You also ask what means are at your disposal to enforce your regulation of counties, cities, or villages. Since the law does not authorize you to license them to conduct lotteries generally, you cannot regulate them by that method as you would licensees of lotteries by pickle cards and bingo.
However, section 31 of LB 259 gives the commission the authority to promulgate `such rules and regulations and prescribe all forms as are necessary to carry out the Nebraska Bingo and Pickle Card Regulatory Act.' Section 34 of LB 259 defines that act as including sections 52 and 61 of LB 259 which are the sections mentioned above authorizing you to regulate county, city, and village lotteries `to insure fairness, equity, and uniformity.'
We are of the opinion you have the authority, by rule and regulation, to make reasonable requirements, limits, guidelines, etc. of counties, cities, and villages, provided such are reasonably related to the above aims of insuring fairness, equity, and uniformity among the governmental subdivisions conducting lotteries. We find no other specific enforcement tool in the act.
3. Since § 28-1116, the section which authorizes governmental subdivisions to conduct lotteries generally, was amended by inserting the provision making them subject to your regulation, as discussed above, we are of the further opinion that your regulation in the areas discussed of insuring `fairness, equity, and uniformity' would control in the event of a conflict.
You have also asked about specific language in section 60(1) and (2). These two subsections relate to the taxing or other regulation by governmental subdivisions of lotteries conducted by others within the political boundaries of the political subdivision involved and have no particular relationship to the authority of the commission, except insofar as it would incidentally relate to your authority to insure fairness, equity, and uniformity as to lotteries generally, as discussed above.
If you have any further questions, please contact us.
Very truly yours, PAUL L. DOUGLAS Attorney General Mel Kammerlohr Assistant Attorney General APPROVED:Paul L. Douglas
Attorney General